## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Johnnie R. Simmons, Jr.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:20cv464 (TSE/MSN)** |
| | ) | |
| **R. Whitaker, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Johnnie R. Simmons, Jr. ("Plaintiff" or "Simmons"), a former[1] Virginia inmate

proceeding pro se, filed a civil-rights suit under 42 U.S.C. § 1983, alleging his rights were

violated while detained at the Hampton Roads Regional Jail ("HRRJ") on February 8, 2019

when he was choked into unconsciousness by defendants R. Whitaker[2] and Derrick Brown. [Dkt.

No. 1 at 4, 9]. Plaintiff also names Benjamin Hull, and Superintendent C. Waltz as defendants in

relation to the February 8, 2019 incident. On July 13, 2021, Defendants Brown and Hull each

filed a motion for summary judgment with supporting exhibits and affidavits. [Dkt. No. 32-34,

97-99]. Plaintiff received the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528

F.2d 309 (4th Cir. 1975) [Dkt. Nos. 33, 98], and he has responded. [Dkt. Nos. 103, 110].

Defendant Waltz has filed a motion to dismiss. [Dkt. No. 130]. Plaintiff received the notice

required by Local Rule 7(K) and Roseboro [Dkt. No. 132], but he has not responded. Thus, the

---

[1] Simmons was released from custody on May 11, 2021. [Dkt. No. 60].

[2] Defendant Whitaker has not been served. The Court listed the efforts that have been made to perfect service on defendant Whitaker in its Order dated December 15, 2021 Order [Dkt. No. 134], and then directed plaintiff to provide an address for service within twenty-one days of the date of that order or show cause within the same twenty-one days "why this civil action should not be dismissed pursuant to Fed. R. Civ. P. 4(m) with respect to defendant Whitaker." [Id. at 2]. Despite Plaintiff having been out of custody for approximately eight months, he has not perfected service on defendant Whitaker. Further, in response to the December 15, 2021 Order, Plaintiff has neither provided an address nor shown cause why Whitaker should not be dismissed. Accordingly, defendant Whitaker will be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

motions are ripe for disposition. For the reasons that follow, the defendants' motions must be granted.

### I. Exhibit No. 4, Video of Incident on February 8, 2019

Plaintiff filed numerous demands for a copy of the video of the February 8, 2019 incident be provided to him for his use in this litigation. [Dkt. Nos. 8, 25, 45]. He was provided a copy of the video (Def. Ex. No. 4) on or about January 4, 2021 as an exhibit attached to Defendant Brown's motion for summary judgment. On January 12, 2021, Plaintiff's filed a pleading with the Court stating that although he had not been able to view the video he "was sure it had been doctored." [Dkt. No. 38 at 1]. Plaintiff, however, has failed to introduce any evidence to support his speculation. Nevertheless, the Court directed the defendants to address the chain of custody for the video/Exhibit No. 4, and other concerns raised by Plaintiff.[3]

The defendants responded and have submitted sworn statements from a non-party defendant establishing that Exhibit No. 4 has not been altered or edited. [Dkt. No. 114]. The affidavit of Terry Walker, IT Analyst at the HRRJ, establishes that he retrieved and downloaded the video file from the jail's camera system after receiving a request from Sgt. Brown on February 12, 2019. Thereafter, Walker placed the downloaded video in a folder on the jail's server and informed Sgt. Brown of its location on HRRJ's server. [Dkt. No. 114-1]. Walker downloaded the video file from Camera No. 178, and he checked HRRJ's system for additional video of the incident and found "no other video from February 8, 2019 involving Mr. Simmons." [Id. at 114-1 at 2]. Walker avers that the original video file that he retrieved and downloaded onto the HRRJ server remains on the server and that he has compared the copy of the video file provided to the Court (Exhibit No. 4) with the original video file and found that they are

---

[3] Plaintiff received a second copy of the video in July 2021 after Defendant Hull had filed his motion for summary judgment.

identical. Walker further avers that HRRJ's video system is proprietary and that to the best of his knowledge, because of the type of file in which the video is stored, there is no way to alter or otherwise tamper with the video file after it is downloaded. [Id.]. Despite being provided an opportunity to respond, Plaintiff has again provided no evidence in support of his assertion that the video was altered.

In addition to Walkers affidavit, defendant Brown submitted an affidavit from a non-defendant HRRJ staff member, Lt. Stephen Phillips, who is in charge of Internal Affairs section at HRRJ. [Dkt. No. 41-1 at 1]. Plaintiff has acknowledged that Lt. Phillips investigated the February 8, 2019 incident. [Dkt. No. 56 at 2].[4] Lt. Phillips avers that Exhibit No. 4 is "the only videotape of the subject incident that was at any time, or currently is, in the possession of HRRJ." [Dkt. No. 41-1 at 2]. Even though he was provided an opportunity to respond to the defendants' submission, Plaintiff has not submitted any evidence that in any way challenges the authenticity or genuineness of Exhibit No. 4.

The Fourth Circuit has held, at the summary judgment stage, that "where … the record contains an unchallenged videotape capturing the events in question," a court need "only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) (citing Scott v. Harris, 550 U.S. 372, 380 (2007)). Although the Fourth Circuit has not indicated what an unchallenged video is, it has consistently held that a party cannot create a genuine issue of material fact through speculation or a

---

[4] In his sworn statement in response to Defendant Brown's motion for summary judgment, Plaintiff avers that HRRJ supplied Detective Thomas of the Portsmouth Police Department with the video Detective Thomas viewed as part of his investigation of Plaintiff's complaint. Further, Plaintiff stated in a prior motion that Detective Thomas had obtained the copy of the video he viewed from Lt. Phillips [Dkt. No. 37 at 3], who has sworn that the video he had was the only copy/version of the video and that it was the same as Exhibit No. 4. In a more recent filing, Plaintiff again states that Detective Thomas obtained the video he viewed from Lt. Phillips. [Dkt. No. 110 at 4]. Plaintiff's averment and admissions support the Defendants' position that Exhibit No. 4 is the only version of the incident and that it has not been altered.

compilation of inferences. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008).

> "Mere unsupported speculation is not sufficient to defeat a summary judgment
> motion if the undisputed evidence indicates that the other party should win as a
> matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th
> Cir. 2006); see Ash v. UPS, 800 F.2d 409, 411-12 (4th Cir. 1986) (per curiam)
> ("[U]nsupported speculation ... is not sufficient to defeat a summary judgment
> motion."). Nor can the nonmoving party "create a genuine issue of material fact
> through mere speculation or the building of one inference upon another." Beale v.
> Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "When the moving party has carried its
> burden under Rule 56(c), its opponent must do more than simply show that there
> is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586
> (footnote omitted).

Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). Plaintiff's allegation the video has been

tampered with is conclusory and unsupported by evidence.

The Fifth Circuit addressed conclusory assertions that a video has been altered in

Waddleton v. Rodriguez, 750 F. App'x 248, 254 (5th Cir. 2018), and rejected that plaintiff's

argument that the video of an incident had been altered.

> Usually a court must adopt the plaintiff's version of the facts at summary
> judgment. However, if record evidence clearly contradicts the plaintiff's
> allegations, a court "should not adopt that version of the facts for purposes of
> ruling on a motion for summary judgment." For example, in Scott v. Harris, the
> Supreme Court ignored the plaintiff's statement of the facts when a videotape in
> the record told "quite a different story." But unlike in Scott, Waddleton challenges
> the authenticity of the video, alleging it "has been altered and parts deleted, the
> volume of the Officers has been turned down and has raised my voice louder to
> slander my actions." However, this allegation is conclusory, unsupported by the
> record, and insufficient to show the district court erred. The video captures the use
> of force in its entirety and there are no sudden jumps, breaks, or other indications
> that the video is altered. This court will not adopt facts that are clearly
> contradicted by the video such as Waddleton's denial that he acted belligerently
> or resisted the officers.

Id. at 253-54; see, e.g., Barnes v. Harling, 368 F. Supp. 3d 573, 611 (W.D.N.Y. 2019) (rejecting

plaintiff's conclusory assertion that the video was altered because "the running time on the video

demonstrates that the video was not altered" and relying on the events as depicted in the video in

granting summary judgment on the relevant claim); Loving v. Roy, No. 12cv551, 2013 U.S.

Dist. LEXIS 127175, *19-20 (D. Min. July 23, 2013) (accepting defendants' video and holding

plaintiff's allegation that the video had been altered or edited was conclusory, and that "[n]aked

assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence

to preclude summary judgment.") (citation omitted), <u>adopted by</u> 2013 U.S. Dist. LEXIS 125293

(D. Minn., Sept. 3, 2013),[5] <u>aff'd</u>, 573 F. App'x 607 (8th Cir. 2014).[6] The Fifth Circuit's decision

in <u>Waddleton</u> is consistent with the Fourth Circuit's position that unsupported speculation cannot

defeat a motion for summary judgment.

The Court has reviewed the video and observed nothing that would indicate it had been

tampered with. The video is not choppy, and is a total of two minutes and 55 seconds in length.

The Court finds that Plaintiff's objection to Exhibit No. 4 is conclusory and based upon

speculation, and that the defendants have sufficiently established that Exhibit No. 4 is an

unaltered version of the incident recorded through Camera No. 178 involving Plaintiff and the

correctional officers at HRRJ on February 8, 2019. The Court will therefore consider Exhibit No.

---

[5] In adopting the Magistrate Judge's Report and Recommendation, the district court in <u>Roy</u> noted that the "U.S. Supreme Court, [had held that] '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" 2013 U.S. Dist. LEXIS 125293, *19-20 n.8 (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)). The district court also found the plaintiff's assertion the video had been altered or edited was not supported by any evidence and was "insufficient to defeat a motion for summary judgment." <u>Id.</u>

[6] In addition to the unsupported and conclusory nature of Plaintiff's assertion that the video has been altered, Plaintiff's assertions do not address how he can state that the video is altered when he maintains that he was unconscious during a portion of the incident on February 8, 2019. [Dkt. Nos. 1 at 4, 5; 39 at 4; 58 at 3; 103 at 1; 110 at 6]. Plaintiff fails to explain how he knows (or could know) a portion of the video near in time to when he avers that he was unconscious is in any way inaccurate when he could not possibly have any knowledge as to what transpired at that time.

Plaintiff has the additional problem of the fact that the video originated with HRRJ and any video submitted would have to begin and end with HRRJ's IT personnel regarding its chain of custody. Walker, the IT Analyst at HRRJ, downloaded the incident on February 12, 2019, and has examined Exhibit No. 4 and compared it to what he downloaded and determined the two are the same. Further, the system used by HRRJ does not allow a video to be altered or edited. [Dkt. No. 114-1]. In addition, Lt. Phillips, who viewed the video shortly after the incident has averred that Exhibit No. 4 and the video he reviewed are the same. Lastly, Detective Thomas, who has nothing to do with HRRJ, viewed a video he obtained from HRRJ and there is no evidence that the video Detective Thomas viewed is not the same as Exhibit No. 4. To the contrary, Plaintiff has repeatedly stated that the video Detective Thomas viewed was sent to him by Lt. Phillips.

4 in determining the undisputed facts for purposes of the pending motions. Plaintiff's objections are included in two motions he has filed seeking to exclude the video [Dkt. Nos. 125, 126] and those motions will be denied.

## II. Undisputed Facts

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed. Plaintiff's responses to both motions for summary judgment do not comply with his obligations under those Rules by submitting statements of undisputed and disputed facts. Instead, he has submitted an affidavit, in two parts [Dkt. Nos. 51, 56], an affidavit that contains primarily hearsay from non-parties or admits the general sequence of events [Dkt. No. 103], and numerous unsworn pleadings repeatedly representing facts based upon hearsay. The following are the undisputed facts based upon review of the motions for summary judgment, the unobjected to records, and Plaintiff's admissions and sworn submissions.

1. At all relevant times, plaintiff was incarcerated at the Hampton Roads Regional Jail ("HRRJ").

2. At all relevant times, Sgt. Brown was a jail officer at HRRJ.

3. On February 8, 2019, Correctional Officers Hunter and Johnson escorted Plaintiff from the medical department back to his housing unit. Before arriving at his designated housing unit, Plaintiff refused to go into his pod and intentionally sat down on the floor. [Dkt. Nos. 99-1 at 1; 99-2 at 1; 99-3 at 1-2; 2/8/19 Video at 12:09:55] (hereinafter "Video at ___").

4. Officer Hull responded to a call for assistance and directed Plaintiff to get up, which

6

Plaintiff refused to do. [Dkt. Nos. 99-1 at 1; 99-2 at 1; 99-3 at 1-2].

5. Sgt. Brown and MJO Whitaker arrived to assist and told Plaintiff to walk to his pod. Plaintiff refused to comply. [Dkt. Nos. 99-1 at 1; 99-2 at 1; 99-3 at 1-2].

6. Plaintiff refused Sgt. Brown's directives, and stated that "if any of you touch me, I will bite you." [Dkt. No. 99-2 at 1].

7. Plaintiff continued to refuse, and the officers brought Plaintiff to his feet, and then picked up and carried him toward his pod. [Dkt. Nos. 99-1 at 2; 99-2 at 2; 99-3 at 2; Video at 12:11:32].

8. As the officers approached the door to his pod, Plaintiff began to kick and flail, and they lowered him down to the floor to regain control. [Dkt. Nos. 99-1 at 2; 99-2 at 2; 99-3 at 2; Video at 12:11:46].

9. Sgt. Brown told plaintiff "to stop and to chill out," but Plaintiff continued to kick and flail. [Dkt. No. 99-2 at 2]. A Correctional Officer ("Whitaker") placed his right arm across the right side of Plaintiff's neck as the three (Hull, Whitaker, and Plaintiff) went to the floor. [Video at 12:11:51]. Once on the floor, Whitaker is near Plaintiff's head and upper left portion of Plaintiff's back while Officer Hull is kneeling on the floor next to Plaintiff's right side, towards Plaintiff's head. [Dkt. No. 34-3 at 2; Video at 12: 11:57]. Whitaker's position is over or on Plaintiff's back for about 50 seconds and then moved to a kneeling position next to Plaintiff's left shoulder. Whitaker kept his right arm on Plaintiff's back as he moved to the kneeling position. [Video at 12:12:41].

10. After Plaintiff was taken to the floor, Officer Hunter went to get leg irons which she placed on Plaintiff after Whitaker had moved to a kneeling position. [Video at 12:12:43]. Next, Plaintiff was rolled over, sat up, and was brought to his feet. [Dkt. Nos. 99-1 at 2; 99-2 at 2; 99-3

7

at 2; Video at 12:13:13-26]. The video shows Plaintiff standing and pointing to papers he had

dropped and then was escorted back to his cell by three officers. [Video at 12:13:27-39]. Two

Correctional Officers picked up Plaintiff's papers, as well as one of his shoes, and followed him

to his cell as the other officers escorted him. [Video at 12:13:40-50]. Plaintiff's pants were not

soiled or wet when he stood up and there was no wet spot or liquid on the floor where he had

been laying. [Video at 12:13:34-50].

  11. Correctional Officers Johnson, Hull and Brown did not observe Officer Whitaker

choke plaintiff. Officer Hull was near Plaintiff's shoulder and head when Plaintiff was on the

floor. [Dkt. Nos. 99-1 at 2; 99-2 at 2; 99-3 at 2].

  12. Correctional Officers Johnson, Hull and Brown did not observe Plaintiff passed out or

unconscious. [Dkt. Nos. 99-1 at 2; 99-2 at 2; 99-3 at 2].

  13. Correctional Officers Johnson, Hull and Brown did not observe urine on the floor.

[Dkt. Nos. 99-1 at 2; 99-2 at 2; 99-3 at 2].

  14. The video begins at 12:09:55, with plaintiff sitting on the floor refusing Officers

Hunter and Johnson's directives for him to go to his pod. Plaintiff refused and Officer Hull, Sgt.

Brown and MJO Whitaker arrived to assist. [Video at 12:09:55]. The video ends with the officers

picking up the papers Plaintiff dropped and then following him to his cell. [Video at 12:13:34-

50].

  15. There is no record of any medical treatment rendered to Plaintiff on February 8, 2019,

other than his visit prior to this incident. [Dkt. No. 99-5]. Sgt. Brown indicated that Plaintiff was

taken to the medical unit on February 8, 2019 after the incident, but that Plaintiff spoke privately

with a nurse before Plaintiff was taken to his new housing assignment. [Dkt. No. 99-3 at 2].

  16. On February 11, 2019, the medical unit saw Plaintiff with regard to two sick call slips

he had submitted for his anti-seizure medications and on-going orthopedic issues. During the examination Plaintiff indicated he had trouble swallowing. The nurse noted an area of slight swelling and tenderness on the right side of his neck that was related to an incident on February 8. The nurse noted that Plaintiff was not in respiratory distress and his voice was not affected. [Dkt. No. 99-6 at 1-2].

### III. Standard of Review

It is well settled that a motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim. See Celotex, 477 U.S. at 323-25. In response to such a showing, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. See id. at 324; Anderson, 477 U.S. at 248. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

In reviewing the record on summary judgment, the Court "must draw any inferences in

9

the light most favorable to the non-movant" and "determine whether the record taken as a whole

could lead a reasonable trier of fact to find for the non-movant." Brock v. Entre Computer Ctrs.,

Inc., 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage

the judge's function is not himself to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

The non-moving party, however, must show more than some metaphysical doubt as to

the material facts. "[T]he non-moving party 'may not rest upon mere allegation or denials of his

pleading but must set forth specific facts showing that there is a genuine issue for trial.'" Hughes

v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 256). Conclusory

allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a

scintilla of evidence will not carry this burden. See Anderson, 477 U.S. at 249-50. There must be

evidence on which the jury could reasonably find for the non-moving party. Id. at 252. The

judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a

preponderance of the evidence that the opposing party is entitled to a verdict.

When a defendant moves for summary judgment on ground that plaintiff lacks evidence

of an essential element of his claim, plaintiff is required, if he wants to ward off grant of the

motion, to present evidence of evidentiary quality (either admissible documents or attested

testimony, such as that found in depositions or in affidavits) demonstrating existence of genuine

issue of material fact; evidence need not be in admissible form, but it must be admissible in

content, in sense that change in form but not in content, would make evidence admissible at trial.

See Celotex, 477 U.S. at 324. Hearsay "is neither admissible at trial nor supportive of an

opposition to a motion for summary judgment." Greensboro Professional Firefighters Ass'n v.

City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995). Such "second-hand" information learned

from others fails to satisfy a plaintiff's burden "to survive a motion for summary judgment."

Monk v. Potter, 723 F. Supp. 2d 860, 875, 878 (E.D. Va. 2010) (citing Greensboro, 64 F.3d at

967; Riggs v. Airtran Airways, Inc., 497 F.3d 1108, 1121 (10th Cir. 2007) (noting statements

conveyed to plaintiff were "second-hand" and inadmissible hearsay in opposition to summary

judgment); Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 89-90 (D.D.C. 2006)

(purported events related by plaintiff in her own deposition were based on second-hand

information rather than personal knowledge and were therefore inadmissible hearsay for

summary judgment purposes); Fed. R. Civ. P. 56(e) (supporting or opposing summary judgment

affidavits must be based on "personal knowledge")).

   A motion to dismiss tests whether a complaint states a cause of action upon which relief

can be granted. Whether a complaint sufficiently states a claim is determined by "the familiar

standard... under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va.

1998). Accordingly, a plaintiff's alleged facts are presumed true, and the complaint should be

dismissed only when "it is clear that no relief could be granted under any set of facts that could

be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

   To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A

claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff's

allegations must "raise a right to relief above the speculative level," and "threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice" to

11

meet this standard. Id.

> The court … is not bound to accept as true "conclusory allegations regarding the
> legal effect of the facts alleged." Labram v. Havel, 43 F.3d 918, 921 (4th Cir.
> 1995). Indeed, the "presence … of a few conclusory legal terms does not insulate
> a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the
> complaint cannot support a finding of [liability]." Young v. City of Mt. Ranier,
> 238 F.3d 567, 577 (4th Cir. 2001). Were this not the case, "Rule 12(b)(6) would
> serve no function, for its purpose is to provide a defendant with a mechanism for
> testing the legal sufficiency of the complaint." District 28, United Mine Workers
> of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1086 (4th Cir. 1979).

Brown v. Mitchell, 308 F. Supp. 2d 682, 691 (E.D. Va. 2004).

## IV. Analysis

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly

inflicting pain on prisoners. Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013); see also Whitley v.

Albers, 475 U.S. 312, 319 (1986). Plaintiff alleges that Whitaker's actions were not justified and

that the other defendants should have stopped him. To prove an excessive force claim, a plaintiff

must show: (1) that the prison official's use of force was objectively harmful such that it violates

contemporary standards of decency; and (2) that the prison official's use of force was not

"applied in a good-faith effort to maintain or restore discipline," but was intended to

"maliciously and sadistically ... cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). It is

the nature of the force used, and not the extent of the injury caused, that serves as the relevant

inquiry. Wilkins v. Gaddy, 559 U.S. 34, 34 (2010).

The subjective portion of an excessive force claim requires plaintiff to demonstrate that

defendants inflicted force sadistically and maliciously for the sole purpose of causing harm when

they carried him towards his cell on February 8, 2019. See Whitley v. Albers, 475 U.S. 312, 320-

21 (1986). The following factors should be balanced in determining whether defendants acted

maliciously and sadistically: (1) the need for application of force; (2) the relationship between

that need and the amount of force used; (3) the threat reasonably perceived by the responsible

officials; and (4) any efforts made to temper the severity of a forceful response. See Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996) (citing Whitley, 475 U.S. at 321; Hudson, 503 U.S. at 7). In addition, the absence of serious injury is a relevant, but not entirely dispositive, factor to be considered in this subjective analysis. Id.

### A. Defendants Brown and Hull

Plaintiff alleges that Defendant Brown violated his Eight Amendment rights because he helped Whitaker carry Plaintiff and did not try to stop Whitaker from choking him until he was unconscious. [Dkt. No. 1 at 4-5]. Plaintiff does not allege that Defendant Hull actually used excessive force against him on February 8, 2019, but that Defendant Hull failed to prevent Officer Whitaker from doing so. The Fourth Circuit has held that "an officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's County, 302 F.3d 188, 204 (4th Cir. 2002). However, as a prerequisite to establishing bystander liability, a plaintiff must prove a violation of a constitutional right by the fellow officer. Id.; see also Willis v. Oakes, 493 F.Supp.2d 776, 784 (W.D. Va. 2007).

Here, the evidence, confirmed by the video tape, indicates that Plaintiff sat down on the floor, refused to get up and return to his housing unit, and that the officers picked him up to carry him back to his housing unit. While being carried, plaintiff began to "kick and flail" his legs. The officers almost dropped Plaintiff and lowered Plaintiff to the floor in order for the officers to regain control. Leg irons were applied. The video tape shows that Plaintiff was on the floor for about fifty seconds before he stood up, conversed with the officers about the papers he had dropped, and then he walked back to his cell escorted by three officers. In sum, Defendants Brown and Hull, as well as the other officers involved, were simply trying to maintain order at

13

HRRJ by getting Plaintiff back to his cell. The actions of the officers do not evince ay malice or ill will. To the contrary, the officers used minimal force to get Plaintiff back to his cell, and used reasonable force to prevent Plaintiff from in jurying himself and to regain control.

Further, the evidence does not establish Plaintiff was choked. Plaintiff relies on the red area on the right side of his neck that was observed three days after the February 8, 2019 incident. However, no marks of any sort were observed on the front or at any other portion of the Plaintiff's throat, which is inconsistent with Plaintiff having been choked. The mark on the right side of Plaintiff's neck, however, is consistent with the video, which shows force was applied to the right side of Plaintiff's neck by Whitaker's right arm as Whitaker lowers Plaintiff to the floor after Plaintiff began kicking and flailing his legs. The force used was necessitated by Plaintiff's actions and was necessary to prevent Plaintiff from falling to the floor and injuring himself. No rational trier of fact could find for Plaintiff against defendants Brown or Hull and their motions for summary judgment will be granted.

### B. Defendant Waltz

Waltz was the Superintendent of HRRJ on February 8, 2019. The complaint does not allege Waltz was present at the time of the incident on February 8, 2019, or that he had any involvement in it. At best, Plaintiff seeks to hold him liable because he was a supervisor, which as a matter of law is insufficient to state a claim. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (holding that supervisory liability exists only where a supervisor was aware that his or her subordinate was acting to violate a plaintiff's rights and acted with deliberate indifference in the face of that knowledge); see also Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012) (noting that a claim under § 1983 for supervisory liability may not succeed without a predicate constitutional violation). To state a claim for relief based on supervisory liability, the complaint

14

must allege facts demonstrating that (1) a supervisory official "knew that [a] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) the supervisory official responded in a manner that "showed deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between [the supervisor's] inaction and the constitutional injury." King v. Rubenstein, 825 F.3d 206, 224 (4th Cir. 2016) (internal quotation marks and citation omitted). The complaint fails to establish any of the requisites and defendant Waltz's motion to dismiss will be granted.

### V. Conclusion

For the foregoing reasons, defendants' motions for summary judgment [Dkt. No. 32, 97], and defendant Walz's motion to dismiss [Dkt. No. 130] must be granted. In addition, Plaintiff's motions to compel production of a "clear" and "unredacted" video and deny summary judgment [Dkt. Nos. 125, 126] will be denied. An appropriate order will issue alongside this memorandum opinion.

Entered this 25th day of ____January____, 2022.

Alexandria, Virginia

/s/

T. S. Ellis, III
United States District Judge